

ENTERED
03/19/2021

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: § | | |
| NIMA MIR; aka BEHNAMIRI; dba RYAN § | CASE NO: 19-33493 | |
| AUTOMOTIVE GLASS & COLLISION § | | |
| CENTER, *et al* § | | |
| Debtor(s) § | | |
| § | CHAPTER 13 | |
| § | | |
| SIFA, INC. § | | |
| Plaintiff(s) § | | |
| § | | |
| VS. § | ADVERSARY NO. 19-3618 | |
| § | | |
| NIMA MIR § | | |
| Defendant(s) § | | |

### MEMORANDUM OPINION

This is a story of an employer/employee relationship gone bad and much like a contentious divorce proceeding, the outcome of this litigation ultimately depends on your view of the evidence and testimony. These two parties who once expressed deep affection for each other cannot now agree on most anything, and their testimony is evidence of that disagreement. The court therefore is put in the position of determining the truth and veracity of disagreeing principal witnesses whose testimony is very contradictory and either supported or not by documentary evidence. The court finds both principal witnesses'[1] testimony lacking in some regards but based on the burden of proof,[2] the court finds the testimony of the plaintiff's principle more probable than the testimony of the defendant. The Court's view is that of the two principal witnesses, the plaintiff's representative's version is more likely than not.

---

[1] The two principal witnesses in this case were the defendant and Sina Sobhani, who testified on behalf of the plaintiff.
[2] The court has applied a "preponderance of the evidence standard."

## FACTUAL BACKGROUND

Nima Mir ("Mir"), the debtor and defendant, immigrated to the United States and found employment in 2010 with the plaintiff, SIFA, Inc. d/b/a Atlas Auto Glass ("SIFA" or "Atlas Auto Glass"), an automobile glass and body shop owned by individuals who share a cultural affinity with him.[3] The principal of the plaintiff is Sina Sobhani, ("Sobhani") whose family started SIFA. Sobhani via his testimony indicated he came to view the defendant as a relative and that he treated the defendant like a son. While the defendant did not express such close affinity, he did acknowledge the business and personal relationship between himself and Sobhani's family. The defendant, when he started employment at SIFA, had no prior experience in either auto glass or body work. However, he was determined, worked hard, and was a quick learner. He endeared himself to plaintiff's management which included the plaintiff's principle and his mother. He was able to advance from his beginning humble position as a shop helper making $50 per day, ultimately becoming the shop manager in 2014 making $5,000.00 per month. Once he became shop manager, he came to have total control over the entire business operations of the plaintiff.

At some point the defendant became disenfranchised with his employment[4] at SIFA.[5]

---

[3] Plaintiff, SIFA, Inc. conducts an auto glass repair business and body shop in Houston, Texas by the name of Atlas Auto Glass.

[4] There is some disagreement as to if the defendant was an employee or an independent contractor. There is no doubt that the plaintiff considered Mir to be an employee, however, he was at times paid as an independent contractor. Nevertheless, for the purposes of this opinion his employment status is not relevant. Irrespective of his status as an employee or an independent contractor the debt he owes to the plaintiff is nondischargeable.

[5] The defendant orally raised [they were not plead] defenses or excuses to the claims of the plaintiff, all of which the court finds have no rational basis in fact or law. The defendant alleges that he became a shareholder of the corporation [ECF No. 61-1], however even if he was a shareholder, this would not have authorized the transactions he took that are described herein. He also testified that he repaid SIFA in cash for any items that he took or appropriated. There is no reliable evidence that this occurred. He also testified that SIFA via Sobhani broke promises to him. Again, even if this was the case, it did not authorize his theft or embezzlement. Also, there was no reliable evidence that this actually occurred. Lastly, he claimed that he was not paid his $5,000.00 monthly salary for the last two months of his employment. This is a true statement; however, defendant did not plead any affirmative defenses. Additionally, irrespective of his failure to plead any affirmative defenses the court finds the

Atlas Auto Glass had evolved from a small "mom-and-pop"[6] glass business to a business with sales well in excess of 1 million dollars per year, had no internal controls in place and a non-existent cash management system. While employed at SIFA, defendant actively planned and opened a competing business.[7] Rather than leaving his employment and making a clean break from the plaintiff, Mir actively incorporated and ran his new business while still under the employment of SIFA. Ultimately, the defendant terminated his employment with SIFA on or about October 23, 2016. Unfortunately, before that termination, he stole SIFA property, embezzled SIFA funds and obtained money and property of the plaintiff by false representations or actual fraud to the plaintiff's damage. As such, the plaintiff requests the court find a nondischargeable judgment under 11 U.S.C. § 523(a)(2) and 11 U.S.C. § 523(a)(4) for the money and property obtained by the defendant while employed at SIFA.

## JURISDICTION AND VENUE

The court has jurisdiction over this adversary proceeding under 28 U.S.C § 1334(b), which provides that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 [the Bankruptcy Code], or arising in or related to cases under title 11." District courts may, in turn, refer these proceedings to the bankruptcy judges for that district. In the Southern District of Texas, General Order 2012–6 (entitled General Order of Reference) automatically refers all eligible cases and proceedings to the bankruptcy courts. A nondischargeability action is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in this district pursuant to 28 U.S.C. § 1409(a).

## FINDINGS OF FACTS AND CONCLUSIONS OF LAW

---

value of these services [at a time when he was actively involved in larceny and embezzlement from his employer] to have no value.

[6] "Mom-and-pop" is a colloquial term used to describe a small, family owned or independent business.

[7] Defendant formed and organized Ryan Automotive Glass and Collision Center, Inc. (Ryan Auto Glass) on April 20, 2016. [ECF No. 62-25].

The defendant actively stole[8] from the plaintiff. This occurred in several ways. First, the plaintiff advertised a phone number that was the cell phone of the defendant with the knowledge and consent of the defendant. While ownership of that cell number is disputed,[9] it is undisputed that the plaintiff was paying for its cell service, while the number was being advertised by the plaintiff for glass repairs services offered by Atlas Auto Glass. The defendant answered these cell phone calls and diverted this business and payments to his new company.[10] Additionally, credit card and debit payments for glass work performed and invoiced by the plaintiff were diverted to the defendant's new business venture.[11] While payments and calls were diverted to the defendant, the expenses for such services were not being paid by Mir or Ryan Auto Glass, but were being paid and expensed by the plaintiff. The defendant was still employed and was actively using SIFA's employees, supplies, and inventory to conduct his stolen jobs.[12] Additionally, the defendant represented to the public his business was the plaintiff's successor,

---

[8] *Quantlab Technologies Ltd. (BVI) v. Godlevsky*, 719 F. Supp. 2d 766 (S.D. Tex. 2010) (To prove conversion, the plaintiff must show an "unauthorized and wrongful assumption and exercise of dominion and control over the personal property of another, to the exclusion of or inconsistent with the owner's rights." *citing Walsath v. Lack's Stores*, 474 S.W. 2d 444, 447 (Tex. 1971)).

[9] Ownership of the cell phone number is disputed. It was the defendant's cell phone number prior to his employment at the plaintiffs. However, during his employment its service was being paid for by the plaintiff. [ECF no. 62-30] The court holds that while the plaintiff was paying the cell charges for this phone number, glass and body shop services that were initiated by calls to that number should have been directed to Atlas Auto Glass and not Ryan Auto Glass.

[10] Defendant testified that he segregated business between Atlas Auto Glass and Ryan Auto Glass during his employment with SIFA based on the phone number the customer called. If the customer called the cell number it was a Ryan Auto Glass customer, if the customer called Atlas Auto Glass's other phone lines it was an Atlas Auto Glass Customer. He also testified that during his employment at SIFA he reimbursed SIFA [in cash] for the Atlas Auto Glass's employee time, supplies, and materials that were used to perform his pilfered jobs. This is a convenient excuse and the court finds it unreliable and untruthful.

[11] The court heard from four witnesses [Zachery Mattson, Hao Shen, George Boos, Christina Varsos] who had work performed by the plaintiff, yet their payment for services by credit or debit card was to Ryan Automotive and Coll, Spring TX. The court finds that these were not isolated events. [ECF 62-19, 62-20]

[12] While Mir claims that he reimbursed the plaintiff for the employees, supplies and inventory that was used to complete these jobs, the court finds that testimony not credible. It finds that damages should be awarded to SIFA for 7 months (April 2016 [Ryan Auto Glass begins business] to October 2016 [employment termination of the defendant] at $10,000 per month). Additionally, it finds damages of $50,000 for theft of goodwill and of future business. The court notes in making its $50,000 damage award that the automobile glass repair business is very advertisement driven. That while the defendant would have received some repeat business based on the advertisement of the cell phone number he held; its long-term effects would have been limited. There was no evidence that Atlas continued to advertise the cell number after the defendant's employment termination.

and that the business name had changed from Atlas Auto Glass to Ryan Automotive Glass and Collision Center.[13] The court awards nondischargeable damages of $120,000.00 for these ongoing thefts.[14]

Second, the defendant actively stole inventory and supplies of the plaintiff's business and sold them on eBay.[15] The evidence reflects that parts and supplies were pilfered from the plaintiff's shop by Mir and sold on his wife's eBay store. Additionally, items not affiliated with the plaintiff's business were paid for by the plaintiff and then sold on eBay. The court awards a nondischargeable debt of $25,792.34 for these thefts.[16]

Third, the defendant actively stole and misappropriated labor and materials in connection with automobiles that he was purchasing at auction and reselling. He had these automobiles serviced at the plaintiff's business and did not pay for these repairs. The court awards a nondischargeable judgment of $58,500.00 for these thefts.[17]

Fourth, the defendant converted a 2005 Toyota Tundra purchased by the plaintiff.[18] The

---

[13] ECF No. 62-31 "Established in 2009 we started it 10 years ago … we recently changed our name to Ryan Automotive Glass & Collision Center."  The defendant immigrated to the United States in 2009 and he was never actively involved in the automobile glass or body shop business until his employment with Atlas Auto Glass between January and March of 2010.  Defendant's business was first established in 2016. He left the employ of Atlas Auto Glass on October 23, 2016.
SIFA's lease on its business premises at 716 Fairview expired on August 31, 2017. ECF No. 118. Thereafter the defendant leased these premises.  The court finds no damages to the plaintiff in this transaction.  The defendant had been terminated from his employment since October of 2016 and the landlord was free to lease the business premises to whomever he choose.  That SIFA did not maintain a successful business relationship with its landlord is not the fault of the defendant.

[14] The court notes that the credit card deposits of the defendant's company Ryan Auto Glass during the time of this employment with the plaintiff would have been easily obtained by the defendant and introduced into evidence. They were not.  The defendant's testimony that he somehow reimbursed the plaintiff in cash for these thefts is not credible.  "Under bankruptcy law, a creditor objecting to the debtor's discharge bears the initial burden of production to present evidence that the debtor made false statements. If the plaintiff establishes a prima facie case, then the burden shifts to the debtor to present evidence that he is innocent of the charged offense." *In re Duncan*, 562 F.3d 688, 695–96 (5th Cir. 2009) (internal citations omitted).

[15] ECF 62-35, 62-36.

[16]  ECF No. 62-36 Amex charges totaling $2,492.34. ECF No. 112, pages 9 and 21, eBay PayPal deposits 6/6/2016 of $20,000 and $2,300, and 10/6/2016 of $1,000.00.

[17] 78 weeks at $750 per week.

[18] ECF No. 62-39.

court awards a nondischargeable damage of $4,800.00 for this conversion.[19]

Fifth, the defendant charged personal expenses on the plaintiff's American Express credit card. The court awards a nondischargeable debt of $1,128.60 for this misappropriation of plaintiff's funds.[20]

Lastly, the defendant stole cash from the plaintiff. However, the court does not award any damages for the defendant's theft of cash. First, the court holds it cannot reasonably calculate an amount of damages to award because of their joint destruction of business records. Second, neither party deposited most of the cash from sales into the company bank accounts, and both destroyed cash invoices.[21] They both "lived out of the cash register."[22] Third, the court finds that both Sobhani and Mir were actively involved in the avoidance of the payment of taxes.[23] Additionally, they both filed incorrect federal income tax returns.[24] Moreover, they both actively avoided the payment of sales taxes by not fully reporting cash sales.[25] Still further, because they paid employees in cash, in whole or in part, they avoided the payment of employment taxes.[26] Additionally, they classified employees as independent contractors to avoid

---

[19] ECF No. 62-39. The court holds this to be the value of the converted 2005 Toyota Tundra.
[20] ECF No. 62-47, page 6 of 14, airline tickets. Damages for any other unauthorized charges are incorporated into other damage awards.
[21] The court holds that the plaintiff's accountings and tax returns were not reliable evidence of sales and expenses given this lack of cash reporting and the overstatement of expenses.
[22] A colloquial term used to describe the making of cash non-traceable by the non-reporting of cash sales and the diversion of cash to other purposes, often living expenses.
[23] The court considers such activity **by both the plaintiff and the defendant** to be "tax evasion," which the court defines as the nonpayment or underpayment of tax.
[24] ECF No. 62-24 [SIFA, Inc.], ECF Nos. 82, 83, and 84 [Nima Mir]. The tax returns of SIFA, Inc. do not reflect all cash sales. SIFA's reporting of employee taxes was probably understated given the cash payments to employees. The tax return of Mir for 2016 does not reflect his income from SIFA, eBay sales or the purchase and sale of automobiles. The defendant received a tax refund in 2018, which appears grossly unjustified. A comparison of bank statements of Ryan Auto Glass (ECF No. 62-26 and 87) and the defendants tax returns for 2018 indicate a very large underreporting of income. Monthly deposits to Ryan Auto Glass often totaled over $60,000 per month in 2018 [8/2018 $76,172.14, 11/2018 $68,025.94, 12/2018 $60,253.63,], gross deposits into the Ryan Auto Glass business checking account in 2018 totaled **$530,722.76**. The defendant's 2018 income tax return indicates only **$30,000.00** in gross receipts for 2018 [ECF No. 84, Page 6]. An underreporting of over $500,000.00.
[25] By not reporting cash sales they paid no sales tax on these transactions even if they collected it from the customer.
[26] Wages paid in cash were probably not reported to the federal government for payment of employment taxes, nor to the state for unemployment taxes.

the payment of employment taxes.[27]  Finally, their income tax returns understated income because while cash receipts were omitted from financial statements and tax returns, expenses of those cash sales were fully reported.

The control by Mir of the plaintiff's business operations, the lack of reporting of cash transactions and the inadequacy of the plaintiff's accounting makes any damage calculation for the theft of cash impossible.  Further, however, and importantly, the plaintiff does not have "clean hands."[28]  The defendant controlled the cash invoices generated at the business.  He also destroyed the cash invoices and did not deposit cash into the plaintiff's bank account.  He also used cash to pay employees and other expenses.  However, this was a pattern of conduct that SIFA via Sobhani condoned prior to Mir's becoming the manager at SIFA and having control over cash transactions.  The plaintiff lacked sufficient procedural and accounting safeguards to track cash.  SIFA did not have a cash register or a point of sale (POS) system that tracked cash.  Cash could be and was easily diverted, and the principles actively encouraged cash sales via a cash discount.  The plaintiffs are totally unable to account for cash during the period of time that Mir was the manager at SIFA or at any point and time prior to his becoming manager of Atlas Auto Glass.  While the issue was not before it, the court believes the amount of cash that was stolen is subject to a wild estimation that it will not make; however, both Sobhani and the defendant were guilty of theft from SIFA at different times.  The court cannot condone this activity by either party, and it will not award a non-dischargeable debt when both parties are responsible for what the court considers to be reprehensible conduct.  All the accounting records

---

[27] Calling an employee an "independent contractor" does not make he/she one.  A worker is an employee when the business has the right to direct and control the work performed by the worker, even if that right is not exercised. Workers at Atlas Auto Glass were given instructions on when and where to work, they used tools and materials provided by Atlas Auto Glass and drove company cars and were paid a regular wage.  They were employees and not independent contractors.

[28]  The clean hands doctrine is based on the maxim of equity that states one "who comes into equity must come with clean hands."  The court routinely denies equitable relief to those who have violated good faith with respect to their claims.

of the plaintiff could have possibly been manipulated both by Sobhani and Mir. The court concedes that its lack of a damage award is a reflection of the six days of evidence that it heard, and that an exact calculation of damages is otherwise impossible regarding the theft of cash. However, the non-cash theft damages awarded are the court's best estimation based on the trial, documentary evidence and the primary testimony of the witnesses who were not affiliated with either the plaintiff or the defendant.

The Court finds that Mir has violated 11 U.S.C. § 523(a)(2)(A) and that SIFA has proved the required elements for such a finding.[29] Specifically, that Mir made representations by failure to disclose[30] to SIFA the existence of Ryan Auto Glass and the diversion of SIFA's clients, cash, supplies, inventory and labor to it while in its employ, and that Mir knew he should have disclosed these fact to SIFA and he failed to do so, and that his silence was intentional and made for the purpose of deceiving SIFA. That his silence intentionally perpetuated a falsehood. That he was silent with the intent to deceive SIFA that he was actively managing and taking actions in their best interest, when he was not. Additionally, that SIFA sustained loss and damage as the proximate result of the representations having been made.

The Court also finds that Mir actively stole from the plaintiff and that these thefts are an

---

[29] The general requirements require proof of the following five elements:
    a. That the debtor made the representations
    b. That at the time he knew they were false.
    c. That he made them with the intention and purpose of deceiving the creditors.
    d. That the creditor relied on such representations.
    e. That the creditor sustained the alleged loss and damage as the proximate result of the representations having been made. *Recoveredge, L.P. v. Pentecost*, 44 F.3d 1284, 1293 (5th Cir. 1995).

[30] With respect to a false representation, the Fifth Circuit and other circuits "have overwhelmingly held that a debtor's silence regarding a material fact can constitute a false representation actionable under section 523(a)(2)(A)." *In re Acosta*, 406 F.3d 367, 399 (5th Cir. 2005) (quoting *In re Norris*, 70 F.3d 27, 30 n.12 (5th Cir. 1995)), *abrogated on other grounds by Ritz*, 136 S. Ct. at 1581. "When one has a duty to speak, both concealment and silence can constitute fraudulent misrepresentation; an overt act is not required. Moreover, a misrepresentation need not be spoken, it can be made through conduct." *In re Mercer*, 246 F.3d 391, 404 (5th Cir. 2001).

exception to discharge pursuant to 11 USC § 523(a)(4) as embezzlement or larceny.[31] However, the defendant was not a fiduciary under this code section.[32] Larceny and embezzlement involve the fraudulent appropriation of property, differing only in timing. Larceny applies when a debtor unlawfully appropriates property at the outset, whereas embezzlement applies when a debtor unlawfully appropriates property after it has been entrusted to the debtor's care.[33] A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for use other than that for which it was entrusted, and the circumstances indicate fraud.[34]

The Court, based on the rational herein, has awarded damages based on embezzlement, larceny, misrepresentation, and actual fraud. The Court does not reach the allegations regarding attorney's fees, exemplary or punitive damages or defenses of the debtor. The live pleadings before this court are ECF No. 1 [the complaint] and ECF No. 40 [the answer]. The court notes that no pleadings support any affirmative defense of the defendant, and an award of attorney fees, exemplary or punitive damages for the plaintiff. The court therefore declines to grant them.

As to SIFA's non-dischargeable claims, the Court has sorted through the limited evidence of damages arising from SIFA's valid claims against Mir. The evidence of damage to the

---

[31] 11 U.S.C. § 523(a)(4) "A discharge under section 727 . . . of this title does not discharge an individual debt …(4) for fraud or defalcation while acting in fiduciary capacity, embezzlement, or larceny."

[32] The term "fiduciary" in the context of section 523(a)(4) is construed narrowly, limited to "technical trusts" and to traditional fiduciary relationships involving "trust-type" obligations imposed by statute or common law. *In re Harwood*, 637 F.3d 615, 619–20 (5th Cir. 2011). "The scope of the concept of fiduciary under [Section 523(a)(4)] is a question of federal law; however, state law is important in determining whether or not a trust obligation exists." *Id.* at 620 (internal citations omitted).

[33] *Wright v. Minardi* (*In re Minardi*), 536 B.R. 171, 190 (Bankr. E.D. Tex. 2015); *Rainey v. Davenport (In re Davenport),* 353 B.R. 150, 199 (Bankr. S.D. Tex. 2006).

[34] *In re Miller*, 156 F.3d at 603 (*quoting In re Sokol*, 170 B.R. 556, 560 (Bankr. S.D.N.Y. 1994). *see also Powers v. Caremark, Inc*. 261 Fed.Appx. 719 (5th Cir. 2008)(embezzlement, however, is not limited to situations in which one person is entrusted with the property of another. It also applies where a person lawfully obtains property, but then fraudulently appropriates it to his or her own use). *Moore v. United States*, 160 U.S. 268, 16 SCT.294, 40 L.Ed. 422 (1895). Embezzlement consists of three essential elements as follows: (1) the debtor appropriated funds, (2) the appropriation was for the debtor's use or benefit, and (3) the debtor did the appropriation with fraudulent intent.

plaintiff is scattered and the court reiterates that it has had to estimate damages based on circumstantial evidence it received. The Court is forced to make specific findings on the amount of damages caused by Mir's violation of 11 U.S.C. § 523(a)(2) and (a)(4). The court suggests that reasonable minds may differ but that its calculation is equitable based on the evidence.

The Court finds that the damages suffered by Mir that are non-dischargeable total $210,220.94. The Court declines to award further damages or attorney fees either due to lack of pleading or for the lack of specificity to the evidence of damages. Additionally, the Court as noted, finds some material fault with Sobhani, which it cannot ignore.

The court therefore awards a non-dischargeable judgment of $210,220.94 to plaintiff SIFA, Inc. against Nima Mir, plus pre-judgment interest from adversary filing date of September 28, 2019, plus post judgment interest both at the federal judgment rate for which execution may issue.

The court makes a referral to the United States Trustee based on the findings herein.

A separate final judgment will follow.

**SO ORDERED**.

SIGNED: 03/19/2021.

_____
Jeffrey P. Norman
United States Bankruptcy Judge